Good morning, Your Honors. My name is David Ness. I'm with the Federal Defenders of Montana, and I represent the defendant, Mr. Vernon Bad Marriage. The issue in this case is whether an admittedly extensive history of non-serious crimes can form the basis for a departure under Section 4A1.3. As the Court is aware, that section allows for departures when the defendant's criminal history substantially underestimates the person's prior criminal conduct, as well as the chances that that person will recidivate. The District Court in this case departed upward one level from Criminal History Category 3 to Criminal History Category 4. How can, I guess from the standpoint, you know, obviously in terms of convictions or in terms of things that aren't considered, Mr. Bad Marriage has a bad record as far as that goes. So on the issue of recidivism in terms of how can a court look at that? I think, Your Honor, and this is a question that I don't think that the Ninth Circuit has completely answered, but I think that under either prong, either under the recidivism prong or whether the criminal history is not adequately reflected, I think that what the Court needs to look at is the underlying seriousness of the offenses. And the offenses that were in this case, I think the government has to concede, were under the case law of the Ninth Circuit not serious. They involved primarily drunken behavior, boorish behavior, a number of shoplifting, some misdemeanor assaults. But particularly when you look at this Court's decision in the Lopez-Pastrana case, and I think it dealt with the Martinez case. And what the Martinez case said is that crimes that are defined under 4A1.2c, and those are crimes such as disorderly conduct, shoplifting, bad checks, those sorts of things, they're not counted because they offer no basis for predicting future criminal conduct. And so if in that context the Sentencing Commission, and indeed this Court has found, that those types of crimes do not form any basis for predicting future criminal conduct, I don't see how they can be then turned around to use to support a departure based upon the recidivism prong. Now, the case that you've cited as for us to look at, I'm assuming that you're saying essentially for guidance, because it's not exactly on point, right? That's correct. Right. That talks about counting, right? Right. In terms of, and this is, and then we have the upward departure. So we, you're asking us to import the language of counting into the upward departure, right? Right. But I think you have to. If it can't be counted for one purpose, I don't see how you can go back and fall back on it and allow it to be counted for upward departure purposes. I guess in terms of if you just put yourself in the sentencing judge's position and say, you know, let's say Mr. Bad Marriage just had the ones that could be counted, and they were in fact counted, and he had nothing else on his record, and then you have another person that actually has his record. What would be the mechanism to not do it? Should they be treated exactly the same? Obviously, the court didn't feel that they should, and the court saw this as the escape hatch to not treat those two individuals exactly the same. And I don't think they need to be treated exactly the same, and that's why the commission provided guideline ranges. One may be sentenced down to the lower end of the guidelines. Mr. Bad Marriage may very well be sentenced to the upper end of the guideline range. Do you think that would be the only way that the court could, I mean, someone with his, I mean, obviously he has a very, albeit not as serious as it could be, but if it were more serious, he would be in prison all those times. But other than that, I mean, he pretty much is a revolving door. I mean, it's almost like every other day, you know, he commits a crime. Drunken, disorderly type of offenses. Yeah, exactly. And some are assault and battery type of things and that type of thing. But, I mean, he certainly has, you know, he's consistent. But I think the sentencing commission in wording the specific departure guideline provision indicates that the underlying offenses have to be serious. But I guess when someone commits so many crimes and over such a long period of time, how doesn't that really give a court something to hang its hat on in terms of recidivist behavior? I mean, let's say now it's escalated and we do have some that are serious enough to be counted. But, I mean, he just has, you know, it's just so there's just such a long period and so many crimes. You know, what better evidence could you have of recidivism? No, I have to concede. They weren't all really serious, but if they were all really serious, he couldn't be such a good recidivist because he'd be in prison. Well, and, you know, maybe there's a point to be made there. However, nevertheless, I think that the guideline, the language of the guideline provision has to control. And the guideline provision, I think, is pretty clear on its face that the underlying crimes have to be serious. And as I recall, there's I think in that same guideline provision, when they're talking about the types of offenses that should never be counted, they talk about a person may have a large number of misdemeanor type offenses and therefore come out higher with a criminal history category than someone would say less, but more serious type offenses. And so I think that the commission specifically looked at and determined that non-serious type offenses, even a great number of them, should not be used either to be counted after a certain point, because you can only count four one-pointers, so to speak, and after that the guidelines say you should stop counting the one-pointers, and also for purposes of departure, of an upward departure. I think it's pretty clear that that's what the sentencing commission has decided to do. Anything else? Nothing else. Thank you. Isn't this a case where the criminal justice system has failed? Alcoholic Indians, putting them in jail, and what do you accomplish? Nothing. Judge Van de Wettering for the United States, Your Honor, and this is very clearly a case where the criminal justice system has failed. What do you think that means? It's really a serious social problem among the Indian tribes, and all we like them to do is just throw them in jail. It's a huge problem. I'm astounded every time I try an Indian country case to sit with the witnesses pretrial and listen to these kids, kids who are 14, 15, 16 years old, talk about their lives, and interspersed in their conversation are stories of how close friends and relatives have gone to prison, have died in horrible accidents, have contracted serious diseases, have died in violent crimes. So I don't know what the answer to the broad context of the question is, and alcohol is clearly an enormously serious problem in the Indian country. Life-beating, rapes, incest. It's terrible, no doubt about it. Terrible. And arguably, Mr. Bad Marriage perhaps should have been charged. And they get names like Bad Marriage, kicking wives, beating up your wife or your girlfriend. Brutally, that's sort of like routine. And the name seems to say it all in this case. So I don't know what the broad answer is on a personal basis, although I hope there is one found. But it's clearly, for Mr. Bad Marriage, not for, at least for his future, not to simply lock him up again and again. But for the people who are the victims of his crime, locking Mr. Bad Marriage up is certainly part of the solution. Well, what's your best? But you have to try to do something that he doesn't do it again, and jail hasn't done a thing. And I would hope that he would get some rehabilitation, maybe this time. So he doesn't? Going to prison? Not so far. That's undoubtedly true, Your Honor. I beg your pardon, Your Honor. Did you have a question? What is your best argument for, you know, I think, you know, Mr. Ness talks about that these, I mean, while we have just a huge number of offenses over a long period of time, that they're not serious. What is your best argument for the guidelines supporting a view that this sort of recidivist behavior can be used to aggravate? I have two arguments, Your Honor. First, I would respectfully disagree with Mr. Ness when he suggests that the guidelines are clear, that each crime must, underlying crime, must be serious. In fact, what the guideline provision for A1.3 actually says is that there can be an upward departure when the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct, the seriousness of his past criminal conduct. That doesn't say that the defendant must have a felony somewhere in his history before there can be an upward departure or a series of felonies. That says that his past criminal conduct must be serious. I don't see how you can look at Mr. Bad Marriage's total picture, all of his past conduct, and say that it's not serious. It's, as you pointed out, it's a revolving door. He's practically not out of jail before he's committing a crime again. And how, at some point, how can that not be serious? My second argument is that the guidelines provide for the possibility of upward departures. If Mr. Ness's argument is true, there could never be an upward departure based on a misdemeanor criminal history. And I don't think you can look at Mr. Bad Marriage. And Mr. Bad Marriage is the perfect example for why that should not be the case. Are either of your arguments a little bit lacking with dispositive case law? Yes. I mean, I think that Mr. Ness said there wasn't exactly a case. He's asking us to import the counting case law into the upward departure, and you're saying there really isn't, there's nothing specifically out there that says 100 misdemeanors amounts to serious recidivist behavior. Exactly. There's no case that says that whatever series of misdemeanors can be serious. There's no case that says misdemeanors can't ever amount to seriousness. That's the trouble with the guidelines. Anything else? No, Your Honor. Thank you. I just have two quick points. What do you think ought to be done to alcoholic Indians besides putting them in prison, jail? I think it's the problems are interactively intertwined with the poverty. I think I think that the the problems are interact and attractively intertwined with the poverty and the other social problems that go along on the Indian reservations. There's clearly a need, I think. No, no. I think I think that there's a clear need to try to address the social problems on the Indian reservations, rather than simply lock people up, because I think it's pretty clear that it just doesn't work. And particularly now, when the treatment opportunities in both federal and state prisons are being cut back as more and more people are being put into prison. Any mines or boil wells on the reservation? Not on this particular reservation, although it is although it is it borders up against Glacier National Park. So there is the potential for tourists. Pardon me. What kind of mine? No, I don't. I don't believe there is a mine on this particular reservation. No. Right. But I just have two two real quick points. And first is that Mr. Vandewettering just stated that if the court accepts accepts my argument, the court could never depart in a situation where a defendant only has misdemeanor type offenses. And I don't think that's true because a court can depart on the basis of conduct, regardless of whether or not the defendant was convicted of a felony. If the conduct underlying a misdemeanor offense indicates that it is, in fact, a serious offense was pled down. They were all wife beating. And based on this conviction, would you say, even though they were all misdemeanor wife beating, would you say based on with this conviction that the court could upwardly depart? I think if there was a description clearly indicating that it involved wife beating, I think that the court could use that underlying conduct to depart. The problem here is with this presentence report is that for the vast number of these convictions, there is no description about what actually occurred. And when you go to look at the statute, a conviction, for example, for domestic abuse under Montana law can be supported by rather innocuous type conduct. And we don't know. And that fall into the similar. Don't you have the serious or similar? I mean, let's just say that they weren't all serious misdemeanors, but there was just a pattern there. And then this offense involved, you know, say this offense involves domestic violence. Wouldn't, you know. I don't know how to exactly answer that question, except I think, again, when you look at, say, Montana's assault statute or the domestic abuse, someone can be convicted for a mere verbal threat for, I think it is, contact which is offensive or annoying. You've got to look at the facts. I think you've got to look at the facts. I don't think you can necessarily just take the conviction when you don't know what happened and say it's serious. Thank you. And we'll come to.
judges: Pregerson, Ferguson, Callahan